UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
5:08-CV-98-V

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND ORDER |
| ) | |
| HICKORY PARK FURNITURE ) | |
| GALLERIES, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendant Hickory Park Furniture Galleries, Inc.'s ("Hickory Park") Motion for Summary Judgment and Memorandum in Support (Dkt. 13 and 14), filed July 1, 2009; Plaintiff Equal Employment Opportunity Commission's (EEOC) Response in Opposition (Dkt. 15), filed July 20, 2009; and Defendant's Reply (Dkt. 16), filed July, 29, 2009.

## FACTUAL BACKGROUND[1]

Hickory Park is a retail furniture business located in Hickory, North Carolina. (Dkt. 14, 2). At the relevant times for the purpose of this case, Hickory Park operated one store, one warehouse, and employed approximately 40 employees. Id. In early February of 2003, Hickory Park hired Allen Humphries, who was fifty-six-years old at the time, to work in returns where his duties included monitoring, recording, and returning damaged and returned items. Id.

---

[1] All facts are presented in the light most favorable to EEOC, the party opposing the motion for summary judgment.

1

Approximately one year after being hired, Humphries was transferred to the position of warehouse worker and truck driver. Id. Humphries' duties in this new position changed to transporting furniture mainly among local manufacturers, the warehouse, and the store. (Ex. A, Dk. 13-1, 3, interrog. #7). Much of this work was completed with the aid of hand trucks, dollies and other mechanical devices. Id. In addition to the warehouse work, Humphries would help on an as-needed basis with in-home deliveries. In-home deliveries were usually handled by those workers employed in that position, but on days those workers were absent or Hickory Park was experiencing heightened volume, warehouse workers would fill in. (Dkt. 14, 3). In-home delivery duties differed from those of warehouse workers because in-home deliveries involved a finite number of employees for a specific job. In-home deliveries required the actual lifting and carrying of pieces of furniture, often up flights of stairs, without the aid of hand trucks, dollies, or other mechanical devices. (Dkt. 14, 2-3). Humphries stated in his deposition that prior to his termination, he worked on in-home deliveries as an alternate two to three times a week. (Ex. D, Dkt. 15-4, 13, ln. 9-13).

In 2006, David Bolick, the CEO of Hickory Park, and Brett Cribb the President of Hickory Park, met with Robert Johnson, the warehouse manager and direct supervisor of Humphries, to discuss the need "for a versatile employee who could reliably perform both pick-up and delivery and regularly serve as the primary alternate on the in-home delivery team." (Dkt. 14, 3). The three men decided that Humhpries' position was the one best suited to be restructured in this manner and that Humphries would not be able reliably to perform the new duties of the restructured position. (Dkt. 14, 3-4). The analysis of Humphries' ability was based in large part on the advice of Johnson, who had the spent the most time observing Humphries at work. (Dkt.

2

15, 5). Bolick stated in his deposition that his decision regarding the termination was also based on Humphries' "physical appearance" and "common sense" when taking into account the size of the furniture to be moved. (Ex. C, Dkt. 15-3, 13, 8-11).

On April 21, 2006, Cribb met with Humphries and informed him that he was being fired because his position was being restructured. (Dkt. 15, 2). Cribb told Humphries that his termination had nothing to do with his job performance. (Dkt. 15, 2-3). Hickory Park had received no complaints concerning Humphries' work performance including his work on the in-home delivery team. (Dkt. 15, 7). Humphries was never disciplined or spoken to as a result of his work performance while employed by Hickory Park, as is required by Hickory Park's employee handbook.[2] (Ex. F, Dkt. 15-6, 5); (Dkt. 15, 7). Humphries stated in his deposition that he heard no one at Hickory Park say anything that led him to believe that he was fired because of his age. (Ex. B, Dkt. 13, 19, 1-3).

One business week after Humphries' termination, Hickory Park hired thirty-three-year-old Brian Carufel to work in the new restructured position. During the first two months of Carufel's employment he did not make any in-home deliveries, performing the same core duties[3] that Humphries performed in his employment with Hickory Park. After three months of employment with Hickory Park, Carufel began helping the in-home delivery team on an as-needed basis but the record contains no evidence showing that Carufel was the "go to" alternate

---

[2] Hickory Park's employee handbook lists nine "causes relating to performance," the violation of which *will result* in one of two things occurring: 1) a warning from the manager *and* a counseling session signed by both the manager and the employee; or 2) immediate dismissal. Of the nine, two causes would potentially cover the alleged deficiencies in Humphries' work performance: 1) Inefficiency or incompetency in the performance of duties; 2) *physical* or mental incapability for performing duties. (Dkt. 15-6, 1-6).

[3] Those core duties were transportation of furniture, with the aid of mechanical devices, among local manufacturers, the warehouse, and the store.

3

for the in-home delivery team. Carufel was placed on the in-home delivery team full time approximately two years after his hiring. (Dkt. 15, 4). There is conflicting evidence before this Court as to whether Carufel ever worked for Hickory Park in the restructured position. Johnson stated in his deposition that the restructured position never took shape the way he had envisioned it. (Ex. A, Dkt. 15-1, 71, 10-14).

## STANDARD OF REVIEW

Summary judgment is proper where "the facts and the law will reasonably support only one conclusion." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quotations omitted). In determining whether this is the case, a court should examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" to decide if "there is no genuine issue of material fact" such that "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001 (4th Cir. 1987), cert. denied 484 U.S. 897 (1987), the Fourth Circuit made it clear that a motion for summary judgment in an employment discrimination case should be handled with care because "motive" and "particular states of mind" are often critical and decisive issues. Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987), cert. denied 484 U.S. 897 (1987) (quoting Charbonnage de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In considering a motion for summary judgment, the court is required to view the facts and inferences in the light

most favorable to the party opposing the motion. Anderson, 477 U.S. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). The Court "may not make credibility determinations or weigh the evidence," and "must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000); see also Anderson, 477 U.S. at 255 (noting that "[c]redibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of the judge.").

However, the party opposing summary judgment "may not rest upon the mere allegations or denials of [his or her] pleadings," FED. R. CIV. P. 56(e), and a "mere scintilla of evidence" is insufficient to overcome summary judgment. Anderson, 477 U.S. at 249-50. Instead, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

## ANALYSIS

To establish a cause of action under the ADEA Plaintiff must prove that "but for" Defendant's alleged discrimination, Humphries would not have been terminated. 29 U.S.C. § 623(a)(1); EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992). A plaintiff can do this in one of two ways: (1) under ordinary standards of proof with direct and indirect evidence: or (2) under the judicially created McDonnell Douglas burden shifting analysis. Clay Printing Co., 955 F.2d at 940. Plaintiff, lacking any direct evidence of discrimination, seeks to prove Hickory Park's discriminatory intent by use of the McDonnell Douglas framework.

5

**McDonnell Douglas Burden Shifting Analysis**

When a plaintiff cannot establish his case under ordinary standards of proof, a plaintiff may prove his case under the judicially created scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), and adapted to ADEA cases. Clay Printing Co., 955 F.2d at 940 (citing Lovelace, 681 F.2d at 239). The McDonnell Douglas scheme has three stages. EEOC v. Western Electric Co., 713 F.2d 1011, 1014 (4th Cir. 1983). First, a plaintiff must establish a *prima facie* case. A *prima facie* case consists of four elements: "(1) [plaintiff] is a member of a protected class, (2) [plaintiff] was discharged, (3) at the time of [plaintiff's] discharge, [plaintiff] was performing at a satisfactory level, meeting [plaintiff's] employer's legitimate expectations, and (4) following [plaintiff's] discharge, [plaintiff] was replaced by a person outside the protected class." Clay Printing Co., 955 F.2d at 941 (citing Lovelace, 681 F.2d at 239-41).

If the plaintiff is successful in establishing a *prima facie* case, the "burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" McDonnell Douglas, 411 U.S. at 802. "The employer is not required to prove absence of a discriminatory motive, but merely articulate some legitimate reason for its action." Clay Printing Co., 995 F.2d at 941 (quoting EEOC v. Western Electric Co., 713 F.2d 1011, 1014 (4th Cir. 1983)). The defendant's burden in articulating a legitimate nondiscriminatory reason is one of production and not persuasion. Id. "Should the defendant carry this burden," the analysis reaches the final stage where "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but a

pretext for discrimination." Burdine, 450 U.S. at 253. "The burden of persuasion remains with the plaintiff throughout." Id. at 256.

    a. Prima Facie Case

The EEOC has established a *prima facie* case, satisfying the four elements set out in Clay Printing Co. Elements one, two, and four are clearly satisfied as Humphries was a member of the protected class (age 58), was discharged, and Humphries was replaced by Carufel (age 33), who fell outside the protected class.

As to the third element, Defendant argues that Humphries was not meeting the legitimate expectations of Hickory Park at the time of Humphries' termination. However, taking the facts in the light most favorable to the plaintiff, Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986), the record shows that there is at least a genuine issue as to whether Humphries was perforrming at a satisfactory level at the time he was discharged. Of particular weight is the fact that at the time Cribb (Hickory Park's President) informed Humphries that he was being terminated, Cribb told Humhpries that the decision "had nothing to do with [his] job performance." (Ex. D, Dkt. 15-4, 8, 15-19). Bolick (Hickory Park's CEO) reflected Cribb's satisfaction with Humphries' job performance in his deposition where he testified that Humphries was doing an "adequate job" and "performing the duties he needed to perform." (Ex. C, Dkt. 15-3, pp. 8-9, 23-25; 1-5). Also of significance is the fact that Hickory Park never received any performance complaints about Humphries from customers, Hickory Park never reprimanded Humphries for any work deficiency as would be required by the employee handbook, and many of Humphries' coworkers that worked alongside him on a daily basis testified that they had no complaints with Humphries'

work performance. (Dkt. 15, 11-12).[4] Based on this evidence, a genuine dispute of material fact exists, FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242 (1986), as to whether Humphries was meeting the legitimate expectations of Hickory Park at the time of termination.

      b. Legitimate Nondiscriminatory Reason for Termination

Hickory Park has offered a legitimate nondiscriminatory reason for the termination of Humphries. As stated before, the burden for Hickory Park is only one of production and not persuasion; it is not the role of the court to further evaluate the legitimate nondiscriminatory reason for termination. DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997) ("Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct . . . .").

Hickory Park offers two reasons for terminating Humphries: (1) Hickory Park's executives and warehouse manager came to the conclusion that a new position needed to be created that required a reliable and flexible worker who could perform both in the warehouse and on in-home deliveries without upsetting the work efficiency in either role; (2) Humphries' position was best suited to be restructured in this manner but Humphries would not be able to perform the tasks required by the new restructured position. Johnson, Cribb, and Bolick based their decision on

---

[4] The depositions in this case furthe confirm that there is a genuine issue as to whether Humphries was meeting the legitimate expectations of Hickory Park at the time of his termination. The EEOC brings the depositions of Charles Blackburn and Darwin DeLacy who both worked in-home deliveries on the same team as Humphries and had no complaints regarding Humphries' performance. (Ex.G, Blackburn Dep., Dkt. 15-7, 27, ln. 12-18; 37, ln. 1-7; 40, ln. 24-41; 48, ln. 13-49); (Ex. H, DeLacy Dep., Dkt. 15-8, 21, ln. 23-34; 27, ln 20-28). Hickory Park brings the depositions of Johnson and Cribb who both testified that they had personally witnessed Humphries struggling to lift pieces of furniture. (Ex. G, Johnson Dep., Dkt. 14-7, 26, ln. 16-18); (Ex. F, Cribb Dep., Dkt. 14-6, 25, ln. 6-21). Depending on the particular employee at Hickory Park asked of their opinion of Humphries' ability, one could receive an answer ranging from Humphries being the least dependable furniture mover to Humphries being a perfectly able furniture mover.

their observations and work experience with Humphries. Humphries was told the restructuring was the basis for his termination in his final meeting with Cribb, and all three men testify in their depositions that this was the reason for the discharge of Humphries. As such, Defendant has satisfied its burden of producing a legitimate nondiscriminatory reason for Humhpries' termination.

    c. Pretext

To survive Hickory Park's summary judgment motion, the EEOC must show a genuine issue of material fact exists as to whether Hickory Park's legitimate nondiscriminatory reason for Humphries' termination was pretextual. The Supreme Court has commented on the burden the plaintiff is faced with at this stage: "[plaintiff] may succeed in [showing pretext] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is *unworthy of credence*." Burdine, 450 U.S. at 256 (citing McDonnell Douglas, 411 U.S. at 804-05) (emphasis added).

As stated above, Humphries was terminated because management at Hickory Park came to the conclusion that Humphries' position needed to be restructured and Humphries would not be able to fulfill the requirements of the restructured position. However, significant factual inconsistencies arise creating a genuine issue of material fact as to both of these reasons as a basis for Humphries' termination.

The record is devoid of evidence showing how the duties of Humphries' position changed in accordance with the restructuring plan. See Driskell v. Continental Cas. Co., 961 F. Supp.

1184, 1189 (N.D. Ill. 1997).[5] Hickory Park does offer an explanation for the irregularities in the restructuring of the position, attributing this to the nature of the unstructured and informal decision-making process exercised at Hickory Park. (Dkt. 16, 6). But this sort of motive assessment and character evaluation is not the proper role of this Court. Accepting as true an explanation of a material fact by the party moving *for* summary judgment is the antithesis of the role of the Court in summary judgment analysis. To be clear, this does not mean that the reason for Humphries' termination was age discrimination. Rather, it means that Humphries has presented sufficient evidence to establish a genuine issue as to whether Hickory Park's reason for terminating Humphries was pretextual. When Humphries' termination is viewed in the light most favorable to the party opposing the motion, it does present a genuine issue of material fact sufficient to defeat Hickory Park's summary judgment motion. A reasonable jury could take the failure of the restructured position to materialize to be evidence that the legitimate nondiscriminatory reason is "unworthy of credence," Burdine, 450 U.S. at 256, meaning Hickory Park's nondiscriminatory reason for termination was pretextual.

Johnson and Bolick both refer to the physical deficiencies of Humphries in their depositions as a basis for termination. However, Humphries frequently participated on the in-home delivery team throughout his career with Hickory Park. While serving as an alternate on the

---

[5] The Court in Driskell found itself in a factual position very similar to the one in this case. Defendant employer underwent a restructuring and as a result Plaintiff's position was terminated and allegedly recreated with additional duties that Defendant did not find Plaintiff to be capable of fulfilling. However, the Court denied summary judgment finding Defendant's proffered legitimate nondiscriminatory reason for termination to be "unworthy of credence," Burdine, 450 U.S. at 256, and therefore pretextual. The Court's denial of summary judgment was based on the finding that Plaintiff's position that was terminated was in fact recreated with essentially the same duties as the terminated position. Driskell, 961 F. Supp. at 1189. The Court also highlighted the fact that Defendant's decision that Plaintiff would not be able to perform the duties of the restructured position was in direct conflict with a work evaluation of Plaintiff conducted a few months prior to Plaintiff's termination. Id.

in-home delivery team, Humphries was never reprimanded for any reason as required by the employee handbook, Hickory Park never received a complaint from a customer regarding Humphries' work, and numerous coworkers testified that they had no complaints regarding Humphries performance in the warehouse or on the in-home delivery. All the way down to his final meeting with Cribb, Humphries was assured that his work performance was not at all a factor in his termination. The factual record is in direct conflict with Hickory Park's proffered reason for terminating Humphries. This conflict could lead a reasonable jury to conclude that the legitimate nondiscriminatory reason is "unworthy of credence," or that "a discriminatory reason more likely motivated the employer." Burdine, 450 U.S. at 256.

This Court observes the deference due Hickory Park in its decision to terminate Humphries and does not pass judgment on whether this decision was wrong or right. DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach and Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir 1997)) ("[I]t is not our province to decide whether reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."). This Court denies summary judgment because what Defendant states as the reason for Humphries' termination does not coincide with Defendant's prior actions; nor is the reason for Humphries' termination consistent with the relevant facts surrounding Humphries' tenure at Hickory Park. For an employee to be dismissed for failure to satisfy the demands of the position the last thing one would expect to find is a record lacking any documentation addressing these deficiencies. On the contrary one would expect to find at least a single customer complaint from an in-home delivery gone bad due to Humhpries' inability; or an instance in which Johnson (Humphries' direct supervisor) acted in accordance with the employee handbook and had a

11

counseling session with Humphries following a showing of "physical incapability . . . for performing duties"; or a more prevalent, if not unanimous, sentiment from coworkers criticizing the physical ability of Humphries. These factual inconsistencies could lead a reasonable jury to determine that Hickory Park's proffered reasons for termination of Humphries were pretextual. Burdine, 450 U.S. at 256.

      This Court acknowledges and respects the nature of the particular line of work being performed at Hickory Park Furniture. Physically demanding labor that takes place in such a small setting requires powerful and efficient workers that are routinely observed by their superiors. However, because Hickory Park has failed to show that the restructured position ever took effect, and because the factual record pertaining to Humphries' performance as an employee conflicts with the decision to terminate Humphries' based on lack of physical ability, genuine issues of material fact exist that should be left to the trier of fact. Anderson v. Liberty Lobby, 477 U.S. 242 (1986). It is important to remember that the Fourth Circuit has advised courts to proceed with caution where a party seeks summary judgment in an employment discrimination claim. Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1979), cert. denied 484 U.S. 897 (1987) (quoting Charbonnage de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Succeeding on such a motion denies the trier of fact the opportunity to evaluate "motive" and "particular states of mind" which can often be decisive determinations in such cases. Id. In this case, there have been decisions and explanations offered that are in conflict with the factual record. In such circumstances, where subjective analysis is determinative, summary judgment is not proper.

## CONCLUSION

This Court finds that Summary Judgment in favor of Defendant is not appropriate because Plaintiff has succeeded in presenting a genuine issue of material fact in regard to Defendant's reasons for terminating Humphries.

## ORDER

**WHEREFORE**, for the Foregoing Reasons, it is hereby **ORDERED** Defendant's Motion for Summary Judgment, (Dkt. #13), is **DENIED.** Accordingly, this matter is scheduled for **JURY TRIAL** during the **November 2011 Trial Term** in the Statesville Division, Calendar Call to be held on Monday, November 7, 2011 at 10:00 a.m., and Jury Selection on Tuesday, November 8, 2011 at 9:30 a..m.

Signed: August 5, 2011

Richard L. Voorhees
United States District Judge